Scott D. Swanson (ISB #8156)
Shaver and Swanson, LLP
1509 S. Tyrell Ln Ste 100
Boise, ID 83706
P.O. Box 877
Boise, ID 83701
Phone: (208) 345-1122
Fax: (888) 388-6035
Email: swanson@shaverswanson.com

Kevin Wang, Esq.
(Pro Hac Vice to be requested)
Marc J. Bern & Partners LLP
One Grand Central Place
60 East 42nd Street, Suite 950
New York, NY 10165
Phone: (212) 702-5000
Fax: (212) 818-0164
Email: kwang@bernllp.com

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT FOR THE SECOND JUDICAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNT OF NEZ PERCE

| | |
|---|---|
| CLAUDIA HEPBURN ) | |
| ) | |
| **Plaintiff,** ) | Case No **CV17 02186** |
| ) | |
| **vs.** ) | **JURY TRIAL DEMAND** |
| ) | |
| **BOSTON SCIENTIFIC** ) | |
| **CORPORATION** ) | |
| **300 Boston Scientific Way** ) | |
| **Marlborough, MA 01752** ) | |
| **Defendant.** ) | |
| ) | |

### COMPLAINT

Plaintiff, Claudia Hepburn, by and through Plaintiff's counsel, alleges as follows:

### PARTIES

1.     Plaintiff, Claudia Hepburn, is a resident of the State of Idaho and 3428 15th Street Space 26, Lewiston, Idaho 19464.

**JAY P. GASKILL**

COMPLAINT-1

2.      Plaintiff is an individual, who was injured as a result of the use of Greenfield Filter. Plaintiff brings this civil action for damages caused as a direct result of the Greenfield Filter.

3.      Plaintiff was implanted with a Greenfield Filter, which caused Plaintiff's subsequent injuries as described herein.

4.      On information and belief, Defendant, Boston Scientific Corporation ("Boston Scientific" or "Defendant"), is a Delaware Corporation duly organized and existing under the laws of Delaware, with its corporate headquarters located at 300 Boston Scientific Way, Marlborough, Massachusetts. Boston Scientific Corporation conducts business throughout the United States, including the state of Idaho.

5.      Defendant, at all times relevant to this action, designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold its filter to be implanted in patients, such as Plaintiff Claudia Hepburn, throughout the United States.

6.      At all times mentioned herein, Defendant was the representative, agent, employee, or alter ego of the others and in doing the things alleged in this Complaint was acting within scope of its authority.

7.      At all times relevant herein, Defendant was engaged in business in Idaho and conducted substantial business activity in Idaho. Defendant has also carried on solicitations or service activities in Idaho.

8.      "Boston Scientific" or "Defendant" includes any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of

any kind; the predecessors, successors, and assigns; their officers, directors, employees, agents, representatives; and any and all other persons acting on their behalf.

9.     Based on information and belief, Defendant, either directly or through its agents, servants, and employees, and at all times relevant hereto, have sold and distributed the Greenfield Filter, IVC Filter, to patients, doctors, and hospitals in throughout the United States.

10.     Plaintiff alleges that each of the named Defendant is responsible in some manner for the occurrences alleged herein, and caused the hereinafter described injuries and damages sustained by Plaintiff.

11.     Based on information and belief, Defendant promotes its business in Idaho.

<u>**GENERAL FACTUAL ALLEGATIONS**</u>

12.     The inferior vena cava ("IVC") is a vein that returns blood to the heart from the lower extremities. In certain individuals, blood clots or thrombi travel from the blood vessels in the leg and pelvis, through the IVC and into the lungs, causing a pulmonary embolism ("PE"). These thrombi can also develop in the deep leg veins and are referred to a deep vein thrombosis ("DVT"). PEs and DVT are dangerous and can often result in death.

13.     Individuals who are at risk of clotting are often treated with anticoagulants such as Heparin, Warfarin, or Lovenox to reduce the risk.

14.     For individuals who are at high risk for PE and/or DVT or for whom anticoagulants are contraindicated, doctors may recommend implantation of an IVC filter to reduce the risk of a thrombotic event.

15.     An IVC filter is a medical device that is designed to prevent blood clots from traveling from the lower extremities to the heart and lungs. It is inserted into the IVC and works by trapping and filtering clots that form in the lower portions of the body.

16.     The first transvenous method of interrupting bloods clots in the IVC was developed in 1967 with the advent of the Mobin-Uddin umbrella filter followed by the Greenfield filter in 1973. The Mobin-Uddin umbrella filters and the Greenfield filters are permanent filters with no retrieval option.

17.     Concerns over long-term complications of permanent IVC filters, particularly in patients in need of PE prophylaxis with a temporary contraindication to anticoagulation, has led to the development of temporary, retrievable filters. Beginning in or around 2003, other medical device manufacturers also began marketing optional or retrievable IVC filters. These filters are designed to be removed from a patient when the risk of PE/DVT has passed. They were not designed to remain inside the IVC indefinitely.

18.     The Defendant research, develop, manufacture, test, market, advertise, promote, distribute, and/or sell Greenfield filters that are marketed and sold as a permanent device to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava.

19.     The Greenfield Filter, which was designed, manufactured, distributed, marketed, and/or sold by the Defendant, is a permanently implanted metal device designed to prevent pulmonary embolism and DVT, and is designed to protect from perforation of the vena cava wall, and to protect from filter migration.

20.     The Defendant's contention that the Greenfield Filter is intended for long-term use, has been presented to the medical community.

21.     The Greenfield Filter is marketed and sold as a permanent filter.

22.     In August 2010, the U.S. Food & Drug Administration (FDA) issued a warning against leaving inferior Filters, both permanent and retrievable, implanted in patients for extended periods due to their potential to cause adverse health complications.

23.     FDA warnings stated that IVC filters are for short-term use in patients at risk for pulmonary embolism, and implanting doctors are to remove the devices once the risk subsides. The FDA published studies concerning risks of doctors not retrieving IVC filters, particularly retrievable filters, intended for short-term placement, exposing patients to problems caused by fractured implants and migrating implants, which can be fatal.

24.     The FDA has since issued two alerts over the problematic nature of permanent and retrievable filters, the first in 2010 following the receipt of some 900 adverse event reports in its reporting database. A further warning was issued 2014, at which point the FDA began affirmatively urging doctors to remove IVC filters, especially retrievable filters, once the danger for a pulmonary embolism had passed.

25.     The 2014 FDA warning addresses reports of adverse events and problems associated with IVC filter devices in general. The reports include device migration, filter fracture, embolization, movement of the entire filter or fracture fragments to the heart or lungs, perforation of the IVC, and difficulty removing the device. Some of these events led to adverse clinical outcomes. These types of events are related to how long the filter has been implanted.

26.     The warning stated: "The FDA encourages all physicians involved in the treatment and follow-up of patients receiving IVC filters to consider the risks and benefits of filter removal for each patient. A patient should be referred for IVC filter removal when the risk/benefit profile favors removal and the procedure is feasible given the patient's health status."

27.     While the warning made mention of retrievable filters, it was clear in the warning when the FDA was warning particularly on retrievable filters and when they addressed IVC filters which included permanent filters.

28.     Despite the FDA alerts in 2010 and 2014 advising of the risks of long-term implantation and urging doctors to remove IVC filters when possible after the passing of pulmonary embolism, Defendant continued to market their Greenfield Filter for long-term use, defying the general instruction and recommendations of the FDA.

29.     A clinical investigation conducted between 2011 and 2015 also showed that despite some filters being noted to be permanent, there was a successful retrieval of Permanent IVC filters (TrapEase and Simon Nitinol IVC filters used in said trials) in over 90% of patients. This shows that permanent filters can be retrievable unless there is a complication with the filters.

30.     In 2012, an annual report released by the American College of Chest Physicians "ACCP") titled *Evidence-Based Clinical Practice Guidelines on Antithrombic Therapy and Prevention of Thrombosis* concluded that "the routine use of IVC filters in addition to anticoagulants is not recommended for most patients with pulmonary embolism." The authoritative report further provided a caution against use if IVC filters because there are "no large studies proving or disproving the efficacy of retrievable filters conclusively" or any indisputable medical clinical evident that this measure is safe for patients with pulmonary embolism of DVT.

31.     In a June 2016 report released in the Seminars in Interventional Radiology Journal did a comparison between Retrievable and Permanent IVC filters.[1] One of the studies cited found that while filters did prevent more PE over anticoagulation alone, the mortality rate was similar between the two groups and that people with IVC filters were more likely to suffer from recurrent DVT. The study was done solely with permanent filters. While retrievable filters are at a slightly higher risk to cause injury when implanted over a longer period of time, a 2008

---

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4862850/#

study found that retrievable filters and permanent IVC Filters had comparable complication rates while having no difference in protection rate.

32.     Section 502(a) and 201(n) of the Federal Food Drug and Cosmetic Act ("the Act") requires the Defendant to fully and accurately disclose information in detail, relating to fracture or migration of the IVC filter, perforation of the heart, lungs, other vital organs, the wall of the vena cava and tissue, cardiac or pericardial tamponade, chest pain, shortness of breath, severe recurrent pulmonary embolisms and DVT, occlusion of clogging on the IVC filter, subsequent revision surgeries, difficulty or impossibility of removal, and other adverse effects of the Greenfield Filter and other labeling, and to include adequate warnings concerning these and other risks in promotional materials for Greenfield Filters.

33.     The Act also prohibits Defendant from minimizing these risks and promulgating misleading claims that the Greenfield Filter is safer than the other IVC filters on the market or that IVC filters in general are a safer long-term alternative to anticoagulant therapies.

## PLAINTIFF SPECIFIC FACUTAL ALLEGATIONS

34.     On or about December 23, 2009, Plaintiff, Claudia Hepburn, was implanted with the Greenfield Filter. Plaintiff, Claudia Hepburn, had been hospitalized for recurrent DVTs. It was decided that the Plaintiff, Claudia Hepburn, would undergo a surgical implant of an IVC filter to prevent further complications.

35.     The Greenfield Filter was implanted into Plaintiff, Claudia Hepburn, at Tri-State Memorial Hospital located in Clarkston, Washington. Based on advice the Plaintiff agreed to the implantation of the IVC filter. Dr. John Mannschreck conducted this procedure and deployed the filter through the right common femoral.

36.     The Greenfield Filter system that was implanted into Plaintiff, Claudia Hepburn, on or about December 23, 2009 was designed and manufactured by Defendant as positively identified on surgical reports, and medical records.

37.     Upon information and belief, the Greenfield Filter was implanted and utilized in accordance with Defendant's specific instructions, guidelines, and directives.

38.     The Plaintiff, Claudia Hepburn has never considered for revision or removal of the device by any medical professionals, nor was she recommended to consider removal upon her surgical discharge.

39.     The most recent alert issued by the FDA in 2014 regarding IVC filters strongly advises physicians to remove patient's filters within two months of implantation or when the issues of DVT and PE have diminished. The Plaintiff, Claudia Hepburn's implant, remains within her body for over eight years, which constitutes a long-term implant and made the Plaintiff, Claudia Hepburn, dramatically more susceptible to the threat of imminent threat of death, migration, thrombosis, blockage or other life-threatening side effects (noted in the FDA alerts about permanent IVC filters.)

40.     Due to the long-term implant of the filter, Plaintiff now requires regular medical monitoring to ensure her health and wellbeing.

41.     Defendant state on different sources that their filters were "Trusted Performance, Timeless Design" and emphasizes their filter's design in protection against certain complications.

42.     At all times relevant hereto, Defendant knew its IVC filters were defective in design and knew that the defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo.

43.     The Defendant failed to disclose to physicians, patients, or Plaintiff in detail that its permanent IVC filter, the Greenfield Filters, were subject to breakage, collapse, migration, causing thrombus and/or the appropriate degree of risk of damage to the vena cava wall and other complications.

44.     At all times relevant hereto, Defendant continued to promote their IVC filters, including the Greenfield Filter, as safe and effective, even though the clinical trials that had been performed were not adequate to support long term efficacy.

45.     Defendant concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the IVC filters, including the Greenfield Filter, as aforesaid.

46.     At all times relevant hereto, Defendant failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the Greenfield Filter.

47.     Defendant's brochure and instructions for us, lacked any notable warnings or indication to the full extent of risks and hazards related to their product.

48.     The Greenfield Filter was designed, manufactured, distributed, sold, and/or supplied by Defendant, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Defendant's knowledge of the product's failure and serious adverse events.

49.     As a direct and proximate result of the Greenfield Filter, Plaintiff, Claudia Hepburn, is at risk of suffering from serious health complication due to the long-term implant of the filter. The tilting of the future is complication can that lead to future injuries. Plaintiff's complications can be attributable to the Greenfield Filter included the increased risk of DVT

despite the implanted device, constant pains in the abdominal region and includes the risk of the filter migrating to the other parts of the vena cava, heart, lungs or other organs, DVT, fracture or breakage of the filter, perforation of the vena cava or other soft tissue, and other complications.

50.     As a direct and proximate result of the wrongful acts and omissions of Defendant, Plaintiff suffered severe injuries, including but not limited to economic damages, severe permanent injuries, emotional distress, psychological trauma of living with a defective product implanted in Plaintiff's body.

## DISCOVERY RULE, ESTOPPEL, AND FRAUDULENT CONCEALMENT

51.     Plaintiff incorporate by reference the factual portion of this complaint as if fully set forth herein and additionally, or in the alternative, if same be necessary, allege as follows.

52.     Plaintiff plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiff had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

53.     Despite diligent investigation by Plaintiff into the cause of Plaintiff's injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages and their relationship to the Plaintiff's filter and Defendant's wrongful conduct was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing of each Plaintiff's claims. Therefore, under appropriate application of the discovery rule, each Plaintiff's suit was filed well within the applicable statutory limitations period.

54.     Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by the Defendant when they had a duty to

disclose those facts. The Defendant's purposeful and fraudulent acts of concealment have kept each Plaintiff ignorant of vital information essential to the pursuit of that Plaintiff's claims, without any fault or lack of diligence on that Plaintiff's part, for the purpose of obtaining delay on that Plaintiff's part in filing on Plaintiff's causes of action. The Defendant's fraudulent concealment did result in such delay.

55. The Defendant are estopped from relying on the statute of limitations defense because Defendant failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of their filters.

56. The Defendant was, and remain under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff, but instead they concealed them. The Defendant's conduct, as described in this complaint, amounts to conduct purposely committed, which they must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff.

## JURISDICTION AND VENUE

57. Jurisdiction is proper over the Parties in this action based on Idaho Code §5-514.

58. This Court has proper jurisdiction over all parties.

59. This Court has personal jurisdiction over the Defendant pursuant to, and consistent with, Idaho's long-arm statute in so far that Defendant, acting through agents or apparent agents, committed one or more of the following:

> a. Defendant transacted, and continue to transact, business in Idaho and conducted, and regularly conduct business, receive substantial revenues, and sell and perform services in this County of Idaho;
>
> b. Requiring Defendant to litigate this claim in Idaho does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

60.    This action is brought to compensate Plaintiff for injuries sustained as a result of the Defendant's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and/or the sale of the Greenfield Filter, a device used in the prevention of pulmonary embolism (PE), implanted in patients throughout the United States. Such activities include, but are not limited to: (a) sales of IVC filters, in this jurisdiction; (b) deploying employees, sales representatives, in this jurisdiction; (c) advertising and marketing of the IVC filters at issue, in this jurisdiction; (d) maintenance of files and equipment relating to the IVC filters at issue in this jurisdiction; (e) maintenance of a website directed to all states, including Idaho.

61.    Venue is proper in this County pursuant to on Idaho Code §5-401 and/or 5-404, which provides, in relevant part, that a county where it regularly conducts business because the Defendant regularly conduct business in this County. This County also is where a substantial part of the events giving rise to the claim occurred.

62.    This is an action for damages, exclusive of interest and costs, which exceeds the sum of fifty thousand dollars ($50,000).

63.    Plaintiff's claims in this action are brought solely under state law. Plaintiff do not herein bring, assert, or allege, either expressly or impliedly, any causes of action arising under any federal law, statute, regulation, or provision.

## COUNT I - NEGLIGENCE

64.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

65.     Defendant had a duty to exercise reasonable case in the design, research, manufacture, marketing, testing, advertisement, supply, promotion, packaging, sale, and distribution of the Greenfield Filter, including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective or unreasonably dangerous to consumers and users of the product.

66.     Defendant had a duty to warn health care providers and users of the full spectrum of risks, dangers and adverse side effects of implantation of the Greenfield Filter.

67.     Defendant received constructive knowledge of the dangers and dysfunctions of the device as manufactured, made evident by 900 adverse event reports to the FDA regarding IVC filters generally, in addition to the published MAUDE Adverse Event Reports regarding the Greenfield Filters.

68.     Defendant knew or should have known that the Greenfield Filters were unsafe when used as designed and manufactured and failed to exercise due diligence and care and were otherwise negligent in the design, manufacture and marketing of this device, including the failure to adequately test the product and the failure to provide adequate warnings to health care providers and consumers of the device.

69.     This is especially true with regards to the lack of warning provided to heath care providers regarding the duration and long term use of the device. The Defendant was negligent, and breached their duties of reasonable care to Plaintiff, Claudia Hepburn, with respect to the IVC filter in one or more of the following respects:

      a.  Despite knowledge of hazards and knowledge that the product was frequently prescribed for the use, Defendant failed to accompany the product with adequate warnings and instructions regarding the adverse and long lasting side effects associated with the use of the Greenfield Filter;

b. The Greenfield Filter as designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

c. Was designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device; and/or

d. Was designed and manufactured so as to present an unreasonable risk of the device tilting and/or perforating the vena cava wall;

e. Was designed and manufactured so as to present an unreasonable risk of causing thrombosis, and/or

f. Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body.

g. Defendant failed to conduct adequate testing;

h. Despite knowledge of hazards, Defendant failed to adequately warn Plaintiff's physicians or Plaintiff, Claudia Hepburn, that the use of the Greenfield Filter could result in severe side effects as described above;

i. Despite the fact that the Defendant knew or should have known that their implanted medical device caused unreasonably dangerous side effects, Defendant failed to adequately disclose the known or knowable risks associated with the Greenfield Filter as set forth above;

j. Defendant willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of the safety and/or welfare of its end users, including Plaintiff, Claudia Hepburn;

k. Defendant failed to design, develop, implement, administer, supervise and monitor its clinical trials for the Greenfield Filter device;

l. Defendant, in its promotion of the device, was overly aggressive and deceitful, and promoted the Greenfield Filter in a fraudulent manner, despite evidence known to Defendant that the Greenfield Filter was dangerous.

70. Defendant furthermore breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Greenfield in, among others, the following ways:

a. Designing and distributing a product which the Defendant knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

b. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices available for the same purpose;

c. Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

d. Failing to perform reasonable pre and post-market testing of the Greenfield Filter to determine whether or not the product was safe for its intended use;

e. Failing to provide adequate instructions, guidelines, and safety precautions, including pre and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Greenfield Filter;

f. Advertising, marketing and recommending the use of the IVC filter, while concealing and failing to disclose or warn of the dangers known by Defendant to be connected with and inherent in the use of the Greenfield Filter;

g. Representing that the Greenfield Filter was safe for its intended use when in fact, Defendant knew and should have known the product was not safe for its intended purpose;

h. Continuing to manufacture and sell the IVC filter with the knowledge that the product was dangerous and not reasonably safe;

i. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the IVC filter so as to avoid the risk of serious harm associated with the use of the IVC filter;

j. Advertising, marketing, promoting and selling Greenfield Filter for uses other than as approved and indicated in the product's label;

k. Failing to establish an adequate quality assurance program used in the manufacturing of the Greenfield Filter; and

l. Failing to establish and maintain an adequate post-market surveillance program.

71.     Defendant continued to manufacture and market its product despite the knowledge, whether direct or ascertained with reasonable care, that the Greenfield Filter posed a serious risk of bodily harm to consumers.

72.     Furthermore, the economic damages and physical harm caused by Defendant's conduct would not have occurred had Defendant exercised the high degree of care imposed upon it and Plaintiff therefore also pleads the doctrine of *res ipsa loquitur.*

73.     The conduct of the Defendant in this matter was intentional, wanton, willful and outrageous beyond all standards of common decency and in reckless disregard and callous indifference to the public, the users of the Greenfield Filter, and the Plaintiff.

74.     As a direct and proximate consequence of Defendant's negligence, Plaintiff, Claudia Hepburn, sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

**WHEREFORE**, Plaintiff, Claudia Hepburn demands judgment against the Defendant and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT II - STRICT PRODUCTS LIABILITY: DEFECTIVE DESIGN

75.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

76.     The Greenfield Filter designed, marketed, manufactured and distributed by Defendant was defective and not reasonably safe due to its improper, inadequate, and defective design.

77.     Defendant designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the Greenfield Filter.

78.     The Greenfield Filter device was unreasonable dangerous to consumers.

79.     Defendant designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the Greenfield Filter.

80.     The Greenfield Filter was expected to, and did, reach the intended consumers, handlers, and persons receiving the product with no substantial change in the condition in which the product was designed, produced, manufactured, sold, distributed, labeled, and marketed by Defendant.

81.     The Greenfield Filter was manufactured, designed, marketed, labeled and sold in a defective condition, for use by Plaintiff, Claudia Hepburn's physicians and/or healthcare providers, and all other consumers of the product, making the product unreasonably dangerous.

82.     The Greenfield Filter, as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant was defective in design and formulation in that when it left the hands of the manufacturers, suppliers, and distributors, the foreseeable risks of harm caused by the product exceeded the claimed benefits of the product.

83.     Defendant's Greenfield Filter, as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant was defective in design and formulation, because when it left the hands of Defendant, the product was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer.

84. At all times relevant to this action, Defendant knew and had reason to know that its Greenfield Filter was inherently defective and unreasonably dangerous as designed, formulated, and manufactured by Defendant, and when used and administered in the form manufactured and distributed by Defendant, and in the manner instructed by Defendant to be used and administered to the Plaintiff and other consumers.

85. Plaintiff, Claudia Hepburn's physicians and/or healthcare providers used and administered the Greenfield Filter for the purpose intended by Defendant, and in a manner normally intended to be used and administered, namely for implantation of the IVC filter to prevent PE and DVT. Defendant had a duty to design, create, and manufacture products that were reasonably safe and not unreasonably dangerous for their normal, common, and intended use. Defendant's product was not reasonably fit, suitable, or safe for its anticipated use, and safer, reasonable alternative designs existed and could have been utilized. Reasonably prudent manufacturers would not have placed the product in the stream of commerce with knowledge of these design flaws.

86. Defendant designed, developed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk of serious harm to the health, safety, and well-being of the Plaintiff, Claudia Hepburn, and other consumers. Defendant are therefore strictly liable for the Plaintiff's injuries and damages sustained proximately caused by Plaintiff's use of the product.

87. Plaintiff, Claudia Hepburn, could not, by the exercise of reasonable care, discover the defective condition of Defendant's product and/or perceive its defective dangers prior to its administration by Plaintiff's physicians and/or healthcare providers.

88. Plaintiff's competent medical team and physicians at Washington Hospital Center could not, by standards or reasonable care, detect the product's defective features or dangers prior to implanting it in the Plaintiff, Claudia Hepburn. Defendant knew or should have known that a reasonably prudent medical practitioner would rely upon the information and literature provided by the manufacturer of a pharmaceutical implant device to instruct as to use, and warn as to dangers, defects and adverse side effects.

89. As a proximate result of Defendant's acts and omissions, the Plaintiff suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for Plaintiff's injuries described in this Complaint, including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

WHEREFORE, Plaintiff, Claudia Hepburn demand judgment against the Defendant, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

### COUNT III: STRICT PRODUCTS LIABILITY: MANUFACTURING DEFECT

90. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

91. Defendant designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Greenfield Filter that was implanted into Plaintiff.

92. The Greenfield Filter implanted in Plaintiff contained a condition or conditions,

which Defendant did not intend, at the time it left Defendant's control and possession.

93.    Plaintiff and Plaintiff's health care providers used the device in a manner that was reasonably foreseeable to Defendant. The device was subjected to normal and anticipated use by the Plaintiff and Plaintiff's healthcare providers.

94.    A malfunction of the Defendant's IVC filter, while implanted in Plaintiff, resulted in her subsequent injuries and health problems.

95.    As a result of the condition or these conditions, the product injured Plaintiff and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner. As a direct and proximate result of the Greenfield Filter's manufacturing defects, Plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

**WHEREFORE**, Plaintiff, Claudia Hepburn demand judgment against the Defendant, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT IV – STRICT PRODUCTS LIABILITY: FAILURE TO WARN

96.    Plaintiff repeats and re-alleges each and every allegation previously set forth herein.

97.    Defendant designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the Greenfield Filter.

98.    The Greenfield Filter was expected to, and did, reach the intended consumers, handlers, and persons receiving the product with no substantial change in the condition in which

the product was designed, produced, manufactured, sold, distributed, labeled, and marketed by Defendant.

99.     The Greenfield Filter was manufactured, designed, marketed, labeled and sold in a defective condition, for use by the Plaintiff, Claudia Hepburn's physicians and/or healthcare providers and all other consumers of the product, making the product unreasonably dangerous.

100.    Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Greenfield Filter and in the course of same, directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of its product.

101.    Defendant's Greenfield Filter, as designed, researched, developed, manufactured, tested, advertised, promoted, marketed, sold, labeled, and distributed by Defendant, was defective due to the product's inadequate warnings and instructions. Defendant knew, or should have known, and adequately warned that its product created a risk of serious and dangerous side effects, including but not limited to, the migration of the filter to the other parts of the vena cava, heart or other organs, DVT, blood clots, fracture or breakage of the filter and other complications.

102.    The product was under the exclusive control of Defendant and was unaccompanied by appropriate and adequate warnings regarding the risk of severe and permanent injuries associated with its use, including, but not limited to, the migration of the filter to the other parts of the vena cava, the heart or other organs and perforation of the vena cava or tissue. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer.

103. Notwithstanding Defendant's knowledge of the defective condition of its product, Defendant failed to adequately warn the medical community and consumers of the defective product, including the Plaintiff and Plaintiff's healthcare providers, of the dangers and risk of harm associated with the use and administration of its Greenfield Filter.

104. Defendant downplayed the serious and dangerous side effects of its product to encourage sales and use of the product; consequently, Defendant placed its profits above its customers' safety.

105. The product was defective when it left the possession of Defendant in that it contained insufficient warnings to alert the Plaintiff and/or Plaintiff's healthcare providers to the dangerous risks and reactions associated with it, including possible migration of the filter to the other parts of the vena cava, the heart or other organs, deep vein thrombosis (DVT), blood clots, fracture or breakage of the filter, perforation of veins and tissue, and other complications.

106. Defendant knew or should have known that the Greenfield Filters were defective and dangerous and showed reckless indifference to or conscious disregard for the Plaintiff's safety by failing to provide proper warnings to the public and the medical community. Plaintiff, Claudia Hepburn, received Defendant's Greenfield Filter as intended or in a reasonably foreseeable manner.

107. Defendant, as manufacturers of pharmaceutical products, are held to the level of knowledge of an expert in the field and, further, Defendant had knowledge of the dangerous risks and side effects of its product.

108. The warnings given by the Defendant, as designers and manufacturers of pharmaceutical implant devices, failed to properly warn consumers properly of the increased risks of fracture or migration of the IVC filter, perforation of the heart, lungs, other vital organs,

the wall of the vena cava and tissue, cardiac or pericardial tamponade, chest pain, shortness of breath, severe recurrent pulmonary embolisms and DVT, occlusion or clogging on the IVC filter, subsequent revision surgeries, difficulty or impossibility of removal, and possibly death.

109.   Plaintiff did not have the same knowledge as Defendant and no adequate warning was communicated to Plaintiff's physicians and/or healthcare providers.

110.   Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of the Defendant. The Defendant had a continuing duty to warn Plaintiff, Claudia Hepburn, and Plaintiff's physicians of the dangers associated with this IVC Filter. Had the Plaintiff received adequate warnings regarding the risks of the device, Plaintiff would not have used the Greenfield Filter.

111.   Defendant's product brochure for the their IVC filter is different from their Instructions for Use ("IFU").

112.   The Defendant's product brochure provides limited information possible complications from the use of the IVC filter.

113.   Defendant's warnings page on their website, which possibly reflects the warning given in their IFUS, Defendant only list general complications and adverse events but fail to warn and state the actual extent of potential injuries caused by their IVC filters.[2]

114.   Defendant failed to state the full extent of ways in which product was not safe and the numerous serious side effects, of which Defendant had full knowledge and did not accurately or adequately warn.

115.   Defendant's warnings and precautions section only cite complications that could arise during immolation of the device.

---

[2] http://www.bostonscientific.com/en-US/products/embolic-protection/greenfield-vena-cava-filter/greenfield-vena-cava-filters.html

116.    Defendant's warnings and complications nor does it use any strong language that would notify or reasonably be expected to catch the attention of a consumer or their medical provider.

117.    The only section on the webpage that addresses adverse events fails to address the full extent of complications, magnitude of risks involved with the IVC filter. The section cannot be considered a sufficient warning or notice.

118.    Defendant had a continuing duty to warn consumers, persons responsible for consumers, and medical providers of its Greenfield Filter, including Plaintiff, of the dangers associated with its product, and by negligently and/or wantonly failing to adequately warn of the dangers of the use of its product, Defendant breached its duty.

119.    Although Defendant knew, or should have known, of the defective nature of its Greenfield Filter, they continued to design, manufacture, market, and sell its product without providing adequate warnings and instructions concerning the use of its product so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by its Greenfield Filter.

120.    Upon information and belief, the Greenfield Filter as manufactured and supplied by Defendant, was further defective due to inadequate post-market warnings or instructions because after Defendant knew, or should have known, of the risk of serious bodily harm from the administration of its Greenfield Filter, including, but not limited to, possible migration of the filter to the other parts of the vena cava, the heart or other organs, deep vein thrombosis (DVT), blood clots, fracture or breakage of the filter and other complications, including death. Defendant failed to provide adequate warnings to consumers and/or their healthcare providers about the product, knowing the product could cause serious injury.

121. The Greenfield Filter, upon information and belief, as manufactured and supplied by Defendant, was defective due to inadequate post-market warnings or instructions when it left Defendant's control.

122. As a direct and proximate result of the wrongful acts and omissions of Defendant, Plaintiff suffered economic damages, severe injuries, and emotional distress. Plaintiff, Claudia Hepburn, endured the mental anguish and psychological trauma of living with a defective product implanted in Plaintiff's body.

**WHEREFORE,** Plaintiff, Claudia Hepburn demand judgment against the Defendant, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT V – BREACH OF EXPRESS WARRANTY

123. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

124. Defendant, as designer and manufacturers of pharmaceutical implant devices, had a duty to exercise reasonable care in the research, development, design, testing, manufacture, inspection, labeling, distribution, marketing, promotion, sale and release of the IVC filter, including the duty to:

     a. Ensure that the product did not cause the user unreasonably dangerous side effects;

     b. Warn of dangerous and potentially fatal side effects; and

     c. Disclose adverse material facts when making representations to physicians, the FDA and the public at large, including Plaintiff.

125.    Defendant expressed in their literature, advertisements, and promotions and through representations by their marketing team and sales agents that Greenfield Filters were safe, effective and fit for implantation into the IVC to prevent PE and DVT for which they were designed, manufactured and marketed.

126.    Defendant's relevant webpage pertaining to the IVC filter, located at: *http://www.bostonscientific.com/content/dam/bostonscientific/pi/portfolio-group/vena-cava-filters/greenfield/Greenfield%20VCF%20Sell%20Sheet%20(PI-25210-AC).pdf,* includes a PDF brochure available for public download that assures the Greenfield Filter in its intended functions. The website explicitly warrants Defendant's device as having "Trusted Performance, Timeless Design."

127.    This brochure was issued after FDA warnings and still contained very limited information and warnings. This brochure might not be the same brochure given to Plaintiff at the time of her implant but still shows the lack of warning and information provided by Defendant after all these years in their marketing materials.

128.    The Defendant's webpage makes claims about the filter such as it is "Proven Stability", "Established Filter Performance" and "Filter Design Promotes Clot Lysis"

129.    The brochure provided on the webpage for Defendant's IVC filter indicates that despite the filter's design being the consistent over 30 years, their design is to be the most trusted and most likely to protect from adverse events.

130.    The brochure provided on the webpage further state that the Greenfield filter has "Recurved hooks are designed to provide protection against penetration."

131.    Defendant's product brochure for the their IVC filter is different from their Instructions for Use ("IFU").

132.     The Defendant's product brochure provides only limited warnings or indication of possible complications from the use of the IVC filter. None of the information on the brochure goes into detail about the potential complications.

133.     Product brochures are commonly used as advertisement material and can be used by sellers to communicate terms of warranty to a buyer and can be a presumptive part of the agreement.

134.     At the time of making such express warranties, Defendant knew and/or should have known that its Greenfield Filters did not conform to the express warranties and representations and that, in fact, its product was not safe and had numerous serious side effects, of which Defendant had full knowledge and did not accurately or adequately warn.

135.     By making such representations, Defendant expressly warranted that the Greenfield Filters were safe and effective, and fit for the uses for which they were designed, marketed, manufactured and distributed.

136.     As explained above, in fact, the Greenfield Filters were not safe, effective, fit nor proper for the use for which they were designed, manufactured and marketed.

137.     Plaintiff, Claudia Hepburn, through Plaintiff's physicians and/or other healthcare providers, did rely on Defendant's express warranties regarding the safety and efficacy of their product in using the product.

138.     Members of the medical community, including physicians and other healthcare professionals, relied upon Defendant's representations and express warranties in connection with the use recommendation, description, and implantation of the Greenfield Filter. Had Plaintiff's physicians been properly equipped with knowledge of the risks and functions of the IVC Filter

that varied from the express warranty, they would not have recommended this implant device to the Plaintiff, Claudia Hepburn.

139.     As a direct and proximate result of the wrongful acts and omissions of Defendant, Plaintiff has suffered economic damages, severe and possibly permanent injuries, and emotional distress. Plaintiff has also endured and continues to suffer the mental anguish and psychological trauma of living with this defective product implanted in Plaintiff's body.

**WHEREFORE,** Plaintiff, Claudia Hepburn demand judgment against the Defendant, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT VI – BREACH OF IMPLIED WARRANT OF MERCHANTABILITY

140.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

141.     At all times relevant to this action, Defendant manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold its Greenfield Filter for use.

142.     Defendant knew of the intended use of its Greenfield Filters at the time Defendant distributed its product for use by the Plaintiff, Claudia Hepburn's physicians and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

143.     Defendant impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiff, Claudia Hepburn, Plaintiff's

physicians, and Plaintiff's healthcare providers, that the Greenfield Filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and promoted to be used.

144. Defendant's representations and implied warranties were false, misleading, and inaccurate because its product was defective, and not of merchantable quality.

145. The representations and implied warranties made by Defendant was false, misleading, and inaccurate because the Greenfield Filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner. Specifically, at the time of Plaintiff's purchase of the Greenfield Filter from the Defendant, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

    a. It was designed in such a manner so as to be prone to an unreasonably high rate of failure, including fracture, migration, excessive tilting, causing thrombosis and/or perforation of bodily organs;

    b. It was designed in such a manner so as to result in an unreasonably high rate of injury to the organs and anatomy; and

    c. It was manufactured in such a manner so that the Greenfield Filter was inadequately, improperly and inappropriately prepared and/or finished, so as to be prone to an unreasonably high rate of failure and/or causing the device to fail.

146. Upon information and belief, Plaintiff, Claudia Hepburn, received and began using a Greenfield Filter manufactured by Defendant.

147. Defendant impliedly warranted that the Greenfield Filter was merchantable pursuant to UCC § 2-314 and suitable for the ordinary purpose for which it was intended to be used for implantation into the IVC to prevent PE and DVT.

148. Defendant breached its implied warranty because its product were not merchantable nor reasonably suited for the ordinary purpose for which they were being used.

149. As a result, Defendant breached UCC § 2-314.

150. As a foreseeable, direct and proximate result of Defendant's acts and omissions and Plaintiff's use of Defendant's defective product, Plaintiff suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for Plaintiff's injuries described herein.

**WHEREFORE**, Plaintiff, Claudia Hepburn demands judgment against the Defendant and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT VII – BREACH OF IMPLIED WARRANTY OF FITNESS

151. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

152. At all times, relevant to this action, Defendant manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold its Greenfield Filter for use.

153. Defendant knew of the intended use of its Greenfield Filter at the time Defendant distributed its product for use by Plaintiff, Claudia Hepburn's physicians and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

154. Defendant impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiff, Claudia Hepburn, Plaintiff's physicians, and Plaintiff's healthcare providers, that Greenfield Filter was safe and of

merchantable quality and fit for the ordinary purpose for which the product was intended and promoted to be used.

155.    Defendant impliedly warranted, pursuant to UCC § 2-315, that the Greenfield Filters were fit for a particular purpose for which they were being used, implantation into the IVC to treat PE and DVT.

156.    Defendant's Greenfield Filters were not fit for the particular purpose for which they were being used.

157.    As a result, Defendant breached UCC § 2-315.

158.    As a foreseeable, direct and proximate result of Defendant's acts and omissions and Plaintiff's use of Defendant's defective product, Plaintiff suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for Plaintiff's injuries described herein.

**WHEREFORE,** Plaintiff, Claudia Hepburn demands judgment against the Defendant and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT VIII – FRAUDULENT MISREPRESENTATION

159.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

160.    Defendant engaged in commercial conduct by selling Greenfield Filters and misrepresented and omitted material information regarding this product by failing to disclose the known risks of their Greenfield Filter and predecessor devices.

161. Defendant, as designers and manufacturers of pharmaceutical implant devices, had actual knowledge of facts, which demonstrated that representations of the Greenfield Filter made in literature distributed to the medical community, consumers and the public via website and brochures regarding this IVC filter were false and misleading. Defendant had an absolute duty to disclose the true facts regarding the safety of the filter to physicians, their patients, and the medical community, which they negligently failed to do. Furthermore, Defendant had a duty to ensure that they had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations concerning the Greenfield IVC Filter, all of which Defendant failed to do.

162. Defendant's relevant webpage pertaining to the IVC filter, located at: *http://www.bostonscientific.com/content/dam/bostonscientific/pi/portfolio-group/vena-cava-filters/greenfield/Greenfield%20VCF%20Sell%20Sheet%20(PI-25210-AC).pdf*, includes a PDF brochure available for public download that assures the Greenfield Filter in its intended functions. The website explicitly warrants Defendant's device as having "Trusted Performance, Timeless Design."

163. This brochure was issued after FDA warnings and still contained very limited information and warnings. This brochure might not be the same brochure given to Plaintiff at the time of her implant but still shows the lack of warning and information provided by Defendant after all these years in their marketing materials.

164. The Defendant's webpage makes claims about the filter such as it is "Proven Stability", "Established Filter Performance" and "Filter Design Promotes Clot Lysis"

165. The brochure provided on the webpage for Defendant's IVC filter indicates that despite the filter's design being the consistent over 30 years, their design is to be the most trusted and most likely to protect from adverse events.

166. The brochure provided on the webpage further state that the Greenfield filter has "Recurved hooks are designed to provide protection against penetration."

167. Defendant's product brochure for the their IVC filter is different from their Instructions for Use ("IFU").

168. The Defendant's product brochure provides only limited warnings or indication of possible complications from the use of the IVC filter. None of the information on the brochure goes into detail about the potential complications.

169. Defendant failed to state the full extent of ways in which product was not safe and had numerous serious side effects, of which Defendant had full knowledge and did not accurately or adequately warn.

170. At the time and place of the sale, distribution, and supply of the Defendant's Greenfield Filter to Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendant expressly represented and warranted, by labeling materials submitted with the product, that the Greenfield Filter was safe and effective for its intended and reasonably foreseeable use.

171. Important information regarding the risk of the Greenfield IVC Filter was in the exclusive control of Defendant and was exclusively known by Defendant. In the furtherance of Defendant's own interests, as designers and manufacturers of pharmaceutical devices and implants, Defendant disseminated false information regarding the IVC Filters to physicians and plaintiffs and did so knowing that the safety of the device as implanted depended on the accuracy

of that information. Further, Defendant knew and expected that recipients of that information would rely on the information that the recipients would take action based upon the information, and that individuals would be put in peril by such actions and that those individuals would suffer physical harm as a result.

172.     By failing to disclose the known dangers and risks of the Greenfield Filters and predecessor devices, Defendant engaged in unfair and deceptive consumer-oriented acts which intentionally, willfully, and knowingly, fraudulently misrepresented to the medical community, the FDA, and consumers, including Plaintiff, Claudia Hepburn, and Plaintiff's health care providers, that its Greenfield Filters had been adequately tested in clinical trials and was found to be safe and effective.

173.     Defendant knew or believed at the time it made its fraudulent misrepresentations, that its misrepresentations were false and fraudulent regarding the dangers and risks associated with use of its Greenfield Filters. Defendant made its fraudulent misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of their product, such Plaintiff, Claudia Hepburn.

174.     Defendant's fraudulent misrepresentations were made with the intent of defrauding and deceiving the medical community, Plaintiff, Claudia Hepburn, and the public, and also inducing the medical community, and the public, to recommend, dispense, and use Defendant's product.

175.     The aforementioned misrepresentations or omissions were made to Plaintiff, Claudia Hepburn, to Plaintiff's physicians, and the medical community, all of whom justifiably and foreseeably relied on those representations or omissions. Plaintiff, Claudia Hepburn, would not have suffered injuries but for the above misrepresentations or omissions of Defendant. Thus,

Defendant and Defendant's misrepresentations or omissions were a cause in fact and a proximate cause of Plaintiff's damages.

176. As a direct and proximate consequence of Defendant's fraudulent misrepresentations, the Plaintiff sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

**WHEREFORE,** Plaintiff demand judgment against Defendant, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT IX - FRAUDULENT CONCEALMENT

177. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

178. At all times during the course of dealing between Defendant and Plaintiff, and/or Plaintiff, Claudia Hepburn's healthcare providers, and/or the FDA, Defendant misrepresented material fact in the safety of the Greenfield Filters for its intended use.

179. Defendant's relevant webpage pertaining to the IVC filter, located at: *http://www.bostonscientific.com/content/dam/bostonscientific/pi/portfolio-group/vena-cava-filters/greenfield/Greenfield%20VCF%20Sell%20Sheet%20(PI-25210-AC).pdf*, includes a PDF brochure available for public download that assures the Greenfield Filter in its intended

functions. The website explicitly warrants Defendant's device as having "Trusted Performance, Timeless Design."

180.    This brochure was issued after FDA warnings and still contained very limited information and warnings. This brochure might not be the same brochure given to Plaintiff at the time of her implant but still shows the lack of warning and information provided by Defendant after all these years in their marketing materials.

181.    The Defendant's webpage makes claims about the filter such as it is "Proven Stability", "Established Filter Performance" and "Filter Design Promotes Clot Lysis"

182.    The brochure provided on the webpage for Defendant's IVC filter indicates that despite the filter's design being the consistent over 30 years, their design is to be the most trusted and most likely to protect from adverse events.

183.    The brochure provided on the webpage further state that the Greenfield filter has "Recurved hooks are designed to provide protection against penetration."

184.    The Defendant's product brochure provides very limited warnings or indication of possible complications from the use of the IVC filter.

185.    Defendant's warnings page on their website only list general complications but fail to warn and state the actual extent of potential injuries caused by their IVC filters.

186.    Defendant failed to state the full extent of ways in which product was not safe and had numerous serious side effects, of which Defendant had full knowledge and did not accurately or adequately warn.

187.    At the time and place of the sale, distribution, and supply of the Defendant's Greenfield Filter to Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendant expressly represented and warranted, by labeling materials submitted with the

product, that the Greenfield Filter was safe and effective for its intended and reasonably foreseeable use.

188.   Defendant knew or were reckless in not knowing that its representations were false.

189.   In representations to Plaintiff's healthcare providers, and/or the FDA, Pharmaceutical Defendant fraudulently concealed and intentionally omitted the following material information:

      a.  that the Greenfield Filters were not safe;

      b.  that the risks of adverse events with the Greenfield Filters

      c.  that the risks of adverse events with the Greenfield Filters were not adequately tested and/or known by Defendant;

      d.  that Defendant was aware of dangers in the Greenfield Filters, in addition to and above and beyond those associated with alternative medications;

      e.  that the Greenfield Filters were defective, and that it caused dangerous side effects;

      f.  that the Greenfield Filter was manufactured negligently;

      g.  that the Greenfield Filter was manufactured defectively;

      h.  that the Greenfield Filter was manufactured improperly;

      i.  that the Greenfield Filters were designed negligently;

      j.  that the Greenfield Filters were designed defectively; and

      k.  that the Greenfield vena cava was designed improperly.

190.   Defendant was under a duty to disclose to Plaintiff, Claudia Hepburn, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA the defective nature of the Greenfield Filters.

191.   Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the IVC filters.

192.   Defendant's concealment and omissions of material facts concerning, *inter alia*, the safety of the IVC filter was made purposefully, willfully, wantonly, and/or recklessly, to mislead

and induce Plaintiff, and Plaintiff's physicians, hospitals and healthcare providers into reliance, continued use of the Greenfield Filter, and actions thereon, and to cause them to purchase, prescribe and/or dispense the device and/or use the product. Defendant's misrepresentation were made with knowledge that their statements were false.

193.    Defendant knew that Plaintiff, Claudia Hepburn, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendant's concealment and omissions, and that these included material omissions of facts surrounding the IVC filter, as set forth herein.

194.    Plaintiff and Plaintiff's Physicians, prior to the date of Plaintiff's implant surgery, relied on the Defendant's representations about the product to use the IVC filter in treating the Plaintiff. Defendant's misrepresentation induced the use of their products to Plaintiff and Plaintiff's physicians.

195.    Plaintiff, Claudia Hepburn, as well as Plaintiff's doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

196.    As a result of the foregoing acts and omissions, Plaintiff, Claudia Hepburn, was caused to suffer and/or was at a greatly increased risk of serious and dangerous side effects, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

**WHEREFORE,** Plaintiff demand judgment against Defendant, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit

and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT X - NEGLIGENT MISREPRESENTATION

197. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

198. Defendant had a duty to represent to the medical and healthcare community, and to the Plaintiff, Claudia Hepburn, the FDA and the public in general that said product, the Greenfield Filter, had been tested and found to be a safe and effective form of therapy.

199. The representations made by Defendant was, in fact, false and Defendant had knowledge of such impersonations.

200. Defendant failed to exercise ordinary care in the representation of the Greenfield Filter, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in those Defendant negligently misrepresented the implanted device's high risk of unreasonable, dangerous side effects.

201. At all times relevant to the cause, and as detailed herein, Defendant negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning the Greenfield filter; including, but not limited to, misrepresentations relating to the safety, efficacy, failure rate and approved uses of the IVC filter.

202. Defendant's intent and purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiff's health care providers; to gain the confidence of the public and the medical community, including Plaintiff's health care providers; to falsely assure them of the quality of the Greenfield filter and its fitness

for use; and to induce the public and the medical community, including Plaintiff's healthcare providers to request, recommend, prescribe, implant, purchase, and continue to use the IVC filter.

203. The foregoing representations and omissions, alleged in this complaint, by Defendant was in fact false. The Greenfield filter is not safe, fit, or effective for human use in its intended and reasonably foreseeable manner. The use of the Greenfield filter is hazardous to the user's health, and said device has a serious propensity to cause users to suffer serious injuries, including, without limitation, the injuries Plaintiff suffered. Further, the device has a significantly higher rate of failure and injury than do other comparable devices.

204. In reliance upon the false and negligent misrepresentations and omissions made by Defendant, Plaintiff, Plaintiff's health care providers and the Plaintiff's agents were induced to, and did use the Greenfield filter, thereby causing Plaintiff to sustain severe and permanent personal injuries.

205. Defendant knew and had reason to know that Plaintiff, Plaintiff's physicians, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by Defendant, and would not have prescribed and implanted same, if the true facts regarding the device had not been concealed and misrepresented by Defendant.

206. Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Greenfield filter.

207. At the time Defendant failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Greenfield filter, Plaintiff, Plaintiff's health care providers and

the Plaintiff's agents were unaware of said Defendant's negligent misrepresentations and omissions.

208.    Plaintiff, Plaintiff's physicians, the Plaintiff's agents and general medical community reasonably relied upon misrepresentations and omissions made by Defendant where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the IVC filter.

209.    As a result of the negligent misrepresentations of the Defendant set forth hereinabove, said Defendant knew and were aware or should have known that the Greenfield Filter had been insufficiently tested, and/or had not been tested, that it lacked adequate and/or accurate warnings, and/or that it created a high risk and/or higher than acceptable risk, and/or higher than reported/represented risks, as well as unreasonable, dangerous side effects, including, migration to the heart, lungs or other organs, perforation of the vena cava wall and tissue, worsened pulmonary embolism, DVT as well as other severe and personal injuries which are permanent and lasting in nature.

**WHEREFORE,** Plaintiff demand judgment against Defendant, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

attorneys' fees, as allowed by law, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

**WHEREFORE,** Plaintiff request trial by jury and that the Court grant them the following relief against Defendant on all counts of the Complaint, including:

(A) Money damages representing fair, just and reasonable compensation for Plaintiff's common law and statutory claims in excess of $50,000.00;

(B) Lost Wages;

(C) Punitive and/or Treble Damages pursuant to state law;

(D) Disgorgement of profits and restitution of all costs;

(E) Attorneys' fees pursuant to state law;

(F) Pre-judgement and post-judgement interests as authorized by law on the judgements which enter on Plaintiffs' behalf;

(G) Cost of suit;

(H) Delay Damages; and

(I) Such other relief as is deemed just and proper.

Dated this 15th day of November, 2017

SHAVER & SWANSON, LLP

By: _____

Scott D. Swanson
Attorney for Plaintiff